IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**TERRY LEE WARD**                                                                                           **PLAINTIFF**

v.                                    No. 5:16-cv-00110 DPM-PSH

**DANNY BURL**                                                                                           **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

#### I. Introduction

Plaintiff Terry Lee Ward, an inmate in the custody of the Varner Unit of the Arkansas Department of Correction (ADC), filed this *pro se* civil rights complaint against Warden Randy Watson of the Varner Super Max Unit (VSM), Warden Danny Burl of the Tucker Maximum Security Unit (MSU), C. Budnik of the VSM, Maj. Bolden of the VSM, inmate proper room supervisor Stephens, Sgt. Brown of the VSM, and unidentified Does. *See* Doc. No. 1. Ward sues defendants in their official and individual capacities and seeks both monetary and injunctive relief.

*See* Doc. No. 1 at 2 & 14. Ward subsequently filed an amended complaint (Doc. No. 10), and an addendum (Doc. No. 11).

Ward raised numerous unrelated claims in his complaint. After screening Ward's complaint,[1] the Court determined that Ward should be allowed to proceed with his claims that Warden Burl denied him access to legal materials he needed to prosecute an appeal before the Arkansas Supreme Court and that Warden Burl transferred him from the MSU to VSM in retaliation for certain grievances he filed and an October 28, 2015 letter he wrote to ADC Director Wendy Kelley. *See* Doc. Nos. 18 & 34.

Before the Court are Warden Burl's motion for summary judgment, supporting brief, and statement of undisputed material facts (Doc. Nos. 107-109). Ward filed a response, supporting brief, statement of undisputed material facts and an addendum to his statement of facts. *See* Doc. Nos. 188-120 & 126. Warden Burl filed a reply (Doc. No. 122). Warden Burl's statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that Warden Burl is entitled to summary judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927

---

[1] The Prison Litigation Reform Act (PLRA) requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must identify cognizable claims or dismiss the complaint if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A.

(8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

The facts listed below are taken from those submitted by Warden Burl that are supported by the following documents attached to Defendant's statement of undisputed facts: Declaration of Danny Burl (Doc. No. 107-1); Administrative Directive 14-03, Inmate Property Control (Doc. No. 107-2); Confiscated Form (Doc. No. 107-3); Property Bag Specification (Doc. No. 107-4); Administrative Directive 11-24, Searches of Inmates, Unit Searches and Control of Contraband (Doc. No. 107-5); Request for Interview Form (Doc. No. 107-6); Declaration of Nicola Kelly (Doc.

No. 107-7); Docket Sheet for *Terry Lee Ward vs. State of Arkansas*, CR-06-1237 (Doc. No. 107-8); *Terry Lee Ward vs. State of Arkansas*, CR-15-237 (Doc. No. 107-9); Grievance MX-15-031138 (Doc. No. 107-10); Grievance MX-15-02896 (Doc. No. 107-11); Declaration of Donnie Brown (Doc. No. 107-12); MSU Library Services Policy (Doc. No. 107-13); Library Request Form (Doc. No. 107-14); Supply History Report (Doc. No. 107-15); and Inmate Transfer form (Doc. No. 107-16). The Court also includes those facts submitted by Ward in his responsive pleadings that are supported by documents of record. Disputed facts are noted.

1. Warden Burl was the Correctional Warden at the MSU from January 2015 until November 1, 2017. Doc. No. 108 at ¶ 5; Doc. No. 107-1 at ¶ 1. The Correctional Warden is responsible for the operations of the prison. *Id.*

2. Warden Burl is familiar with Ward, who was housed at the MSU from August 27, 2014 until November 18, 2015. Doc. No. 107-1 at ¶ 2.

3. Inmates are allowed one property box in their cell and are allowed the amount of personal property (including legal materials) that will fit in their property box. Doc. No. 107-1 at ¶ 3; Doc. No. 107-7 at ¶¶ 2-3. If there is excess property in an inmate's cell, the property will be inventoried in front of the inmate. Doc. No. 107-7 at ¶ 2.

4. Inmates are allowed to have legal materials in their cell. Doc. No. 107-7 at ¶ 2. According to Warden Burl, inmates are required to present proof that their legal materials belong to an active case. Doc. No. 107-1 at ¶ 3. Ward disputes he is required to prove that his legal materials relate to an active case. *See* Doc. No. 118 at 5 & 10; Doc. No. 119 at 7; Doc. No. 120 at 2-3. Captain Kelly does not describe this requirement in her declaration and it does not appear in Administrative Directive 14-03. *See* Doc. Nos. 107-7 & 107-2. MSU's law library policy provides that inmates who have been on punitive segregation for 20 days may request legal materials from

the law library. Doc. No. 107-13 at 4. If an inmate needs such materials sooner, he must present proof that a deadline for an active case cannot be met unless he receives the materials sooner. *Id.* It is not clear whether this policy applies to an inmate's confiscated legal papers or just those legal materials available from the law library.

    5.    Captain Nicole Kelly was the Property Officer for a portion of the time that Ward was incarcerated at MSU. Doc. No. 107-7 at ¶ 1.

    6.    According to Captain Kelly, Ward had many property bags holding paperwork. *Id.* at ¶ 3. Captain Kelly decided the amount of property in Ward's cell was excessive and constituted a fire hazard. *Id.* at ¶ 4.

    7.    Ward's excess property was inventoried and taken to the property room on September 8, 2015. *Id.* at ¶ 3; Doc. No. 107-3. The excessive property was physically removed from Ward's cell by Angelah Kennedy and James Carlton. Doc. No. 107-1 at ¶ 3; Doc. No. 107-3.

    8.    Warden Burl did not make the decision to remove Ward's excessive property and was not aware that some of Ward's excessive property was removed from his cell on September 8, 2015, when he was moved to isolation. Doc. No. 107-1 at ¶¶ 4-5.

    9.    The MSU confiscation form for Ward's property listed 70 assorted transcripts and loose legal materials in various envelopes and six books. Doc. No. 107-3.

    10.    According to the ADC's property control policy, Administrative Directive 14-03, an inmate who wants access to stored property can send a request to the Property Office by

completing a request for interview form for the Property Officer. Doc. No. 107-7 at ¶ 3; Doc. No. 107-2 at 7.[2]

11. According to Captain Kelly, Ward has accessed excessive property in the MSU property room. Doc. No. 107-7 at ¶ 3. Captain Kelly did not state whether Ward requested to access or in fact accessed his legal documents after he was placed in isolation on September 8, 2015. Ward generally alleges he asked for help but it was denied, and objects to the submission of a blank library request form instead of his actual library request forms. *See* Doc. No. 118 at 3.

12. According to Donnie Brown, who is responsible for the Law Library at MSU, Ward had access to the Law Library and access to legal assistance at all times that he was housed at MSU.[3] Doc. No. 107-12 at ¶¶ 1 & 4. Ward used the law library numerous times during 2015 until he was transferred to VSU on November 18, 2015. *Id.;* Doc. No. 107-15.[4]

13. On November 18, 2015, Ward was transferred to VSM. Doc. No. 107-1 at ¶ 6; Doc. No. 107-16.

14. All of Ward's property, including excessive property, was transferred to VSM when Ward was transferred. Doc. No. 107-1 at ¶ 6. None of Ward's property, including his confiscated property, remained at MSU. *Id.*

---

[2] Ward generally objects to Warden Burl's submission of unsigned exhibits such as the law library policy. *See* Doc. No. 118 at 3. Ward does not assert that the policies are not in fact accurate copies of the relevant ADC policies and offers no proof that they are not accurate copies.

[3] Ward does not challenge the adequacy of MSU's law library in this case. Accordingly, the extensive information provided by Donnie Brown regarding the services provided by the library is not material to this case. The Court notes that Ward states he does not know Brown and that Brown may not have worked in the MSU library when Ward was there.

[4] Ward questions the authenticity of Doc. No. 107-15, the list of dates Ward used the law library, because one date is listed the day after he was transferred to the VSM. *See* Doc. No. 118 at 4. Ward does not otherwise dispute that he used the law library during this time period.

15. Ward was transferred to VSM as part of a randomly-picked swap made by VSM Classification. Doc. No. 107-1 at ¶ 7. The swap was for Larry Jones ADC # 070147, who had a settlement and a court had ordered him to be removed from VSM. *Id.*; Doc. No. 107-16.

16. Prior to his transfer to VSM, Ward submitted various grievances and requests complaining about Warden Burl and/or his access to his legal materials. *See* Doc. No. 118 at 7 (referencing Doc. No. 8 at 4-5 &16; Doc. No. 80 at 174-176 & 180-190).

17. Ward maintains he was harmed by his transfer to VSM in that he lost some privileges and possibly class status. Doc. No. 118 at 9.

18. Ward's appeal in *Terry Lee Ward vs. State of Arkansas*, CR-06-1237, was affirmed by the Arkansas Supreme Court on June 28, 2007. Doc. No. 107-8 at 7. There was no activity in this case between August 22, 2014, and April 11, 2016. *Id.* at 11.

19. The record in *Terry Lee Ward vs. State of Arkansas,* CR-15-237, was checked into the Arkansas Supreme Court clerk's Office on September 9, 2015. Doc. No. 107-9 at 11. Pursuant to *per curiam* Order in CR-15-237, on September 17, 2015, the Arkansas Supreme Court ordered that a copy of the court record be provided to Ward. *Id.* at 12.

20. In CR-15-237, Ward was granted several extensions of time to file his Appellant's Brief. *Id.* His Appellant's Brief was last due on March 21, 2016. *Id.* at 19. Ward did not file an Appellant's Brief in CR-15-237, and the appeal was dismissed on May 5, 2016. *Id.* at 22.

### IV. Analysis

*A.    Sovereign Immunity*

Warden Burl correctly asserts that Ward's monetary claims against him in his official capacity are barred by sovereign immunity. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan*

*Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Additionally, any claims for injunctive relief are moot because Ward is no longer incarcerated at the MSU and Warden Burl no longer works there. Accordingly, the undersigned recommends that Warden Burl be awarded summary judgment with respect to Ward's official capacity claims.

### B.     *Qualified Immunity*

Warden Burl asserts he is entitled to qualified immunity with respect to Ward's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

<u>Access to Courts Claim</u>

In *Bounds v. Smith*, the U.S. Supreme Court recognized that prisoners' constitutional right of access to the courts is well-established. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The taking of an inmate's legal papers can unconstitutionally interfere with the inmate's right of access to the

8

courts. *See Goff v. Nix*, 113 F.3d 887, 892 (8th Cir. 1997). However, to succeed on a claim for a violation of the right of meaningful access to the courts, a prisoner must establish that he or she suffered an actual injury or prejudice caused by the denial of access to legal materials, counsel, or the courts. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). *See also White v. Kautzky,* 494 F.3d 677 (8th Cir. 2007) ("To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."). The injury requirement "is not satisfied by just any type of frustrated legal claim." *Lewis,* 518 U.S. at 354. The claim must involve an attempt by the inmate to pursue direct appeal from a conviction for which he or she is incarcerated, a habeas petition, or an action under 42 U.S.C. § 1983 to vindicate the violation of a basic constitutional right. *Id.* at 355 ("The tools [required by *Bounds*] are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

Ward contends that Warden Burl deprived him of necessary legal materials which caused him to be unable to prosecute a post-conviction appeal in Case No. 15-237.[5] Warden Burl asserts that he is entitled to qualified immunity because Ward has failed to prove the violation of a clearly

---

[5] In his initial complaint, Ward also alleged that he was deprived of legal materials needed to prosecute another civil rights action in this Court, No. 5:15-cv-00102-DPM. *See* Doc. No. 2 at 10. However, Ward voluntarily dismissed that case just 11 days after he filed it. Ward also complained that he was impeded from preparing the complaint and amended complaint in this case. *See* Doc. No. 10 at 8. This case was filed after Ward was transferred to VSU, and accordingly, Ward's frustrations in prosecuting this case cannot form the basis of a lawsuit against Warden Burl, the only defendant in this case.

9

established constitutional right. In support, Warden Burl makes four arguments, each of which are discussed below.

First, Warden Burl argues that he cannot be sued based solely on his supervisory role. The law is clear that *respondeat superior* is not a recognized basis for § 1983 liability. *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997). To state a cognizable claim against a defendant in a supervisory role, an inmate must allege that the defendant was personally involved in the constitutional violation or became aware of the constitutional violation and, with deliberate indifference, failed to take corrective action. *See, e.g., Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). Ward has alleged that Warden Burl was aware of his complaints regarding the taking of his legal materials via multiple grievances submitted by Ward as well as a letter he wrote to ADC Director Wendy Kelley that was answered by Warden Burl. *See, e.g.,* Doc. No. 118 at 10. Ward specifically points to Warden Burl's response to Grievance MX-15-02585 in which Warden Burl responded to Ward's complaint regarding his inability to access his legal materials by stating:

> Staff has advised that you were going to "Punitive Isolation" where you would not be able to have any legal materials unless you can show that it pertains to an active case. Staff videoed you being afforded the opportunity to provide proof of any active cases for which you would need your legal materials. You were unable to provide said proof. Your excessive legal materials are currently being stored in the Unit's Property Room. Therefore, I find this grievance to be without merit.

Doc. No. 8 at 5. Because Ward has shown that Warden Burl was aware of his complaints regarding his access to legal materials and Ward has alleged that Warden Burl failed to take corrective action in response, the Court does not find Warden Burl is entitled to summary judgment based on his lack of personal involvement in the taking of Ward's legal materials.

Second, Warden Burl argues that Ward had access to the law library and legal assistance at all times. Ward generally denies this but provides no proof to counter that provided by Warden Burl which shows that Ward used the law library many times during the relevant time period. One

mistaken date on the supply history report (Doc. No. 107-15) is insufficient to question the credibility of this report or the accompanying declaration of Donnie Brown, the person responsible for the law library. However, even if Ward generally had access to the law library and legal assistance, the taking of documents related to his pending state court proceedings could establish a constitutional violation if such taking impeded Ward's ability to prosecute his state court appeal. Accordingly, the Court does not find Warden Burl is entitled to summary judgment on this basis.

Third, Warden Burl argues that Ward's property was taken in accordance with ADC policy and that Ward had access to his excess property at all times. Warden Burl has shown that the property constituted excess property and was taken in accordance with ADC policy, Administrative Directive 14-03. However, Ward disputes that there is an ADC policy which required him to prove that his legal materials related to an active case in order to retrieve them. Administrative Directive 14-03 does not include this requirement but states that inmates may have access to their legal materials upon request. *See* Doc. No. 107-2 at 7. Warden Burl's response to Ward's Grievance, quoted above, indicates that Ward was required to prove that his materials related to active case because he was in punitive isolation. It is not clear that the law library policy regarding obtaining legal materials from the law library while in punitive segregation applies to an inmate's personal legal papers (as opposed to legal materials from the law library). Accordingly, there is no ADC policy on the record that contains this requirement with respect to an inmate's personal legal papers. Further, Warden Burl has provided no evidence that Ward did not request his property – the declaration of Donnie Brown states that Ward could have requested his materials but does not emphatically state that he did not. Ward indicates he did. Given that there is some factual dispute as to whether Ward was actually able to access his excess property in

11

accordance with ADC policy, the Court does not find that Warden Burl is entitled to summary judgment on this basis.

Finally, Warden Burl asserts that Ward suffered no injury as a result of the retention of his legal materials while he was in punitive isolation. The record supports Warden Burl's argument. From the time Ward's property was taken (September 8, 2015) until the time Ward was transferred to VSM (November 18, 2015), there was no activity in Case No. 06-1237 and no pending deadlines. In CR-15-237, Ward obtained several extensions to file his appellant's brief, and it was ultimately not due until March 19, 2016, approximately four months after he was transferred to VSM. Accordingly, Ward has not shown that he suffered any prejudice or injury as a result of his legal materials being taken on September 8, 2015. If he could not obtain his legal materials after he was transferred to VSM in November 2015, he may have been prevented from timely filing his appellant's brief in CR-15-237. However, that is the subject of another lawsuit against other defendants.[6] Whatever trouble Ward had accessing his legal materials at MSU did not impede his ability to prosecute his state court appeal. Accordingly, Ward has failed to show the violation of a constitutional right, and Warden Burl is entitled to qualified immunity on Ward's access-to-courts claim.

Retaliation

To succeed on a § 1983 retaliation claim, a plaintiff must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against the plaintiff that would chill a person of ordinary firmness from engaging in that activity. *See Lewis v. Jacks*, 486 F.3d 1025, 1028–29 (8th Cir. 2007) (citing *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)). *See also Doering Reed*, No. 6:15-CV-06093, 2016 WL 3148642, at *3 (W.D. Ark.

---

[6] Ward has filed a suit against Wendy Kelley and VSM officials relating to his access to legal materials. *See Ward v. Kelley, et al.,* No. 5:17-cv-00227-KGB-JJV. That suit is pending.

12

Apr. 29, 2016), *report and recommendation adopted sub nom. Doering v. Reed*, No. 6:15-CV-6093, 2016 WL 3162137 (W.D. Ark. June 3, 2016) ("Speculative and conclusory, or *de minimis* allegations, however, cannot support a retaliation claim."). In *Revels*, the Eighth Circuit Court of Appeals held that the plaintiff must prove a causal connection between the constitutionally protected activity and the adverse action. 382 F.3d at 876. Temporal proximity between a protected activity and an adverse action "is relevant but not dispositive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)); *see also Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794, 800 (8th Cir. 2009) ("[E]vidence of temporal proximity alone is generally insufficient to raise a triable issue of material fact on retaliatory motive."). The plaintiff must also provide affirmative evidence of a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d 1152, 1157 (8th Cir. 2009); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient.").

Ward claims that Warden Burl transferred him to the VSM in November 2015 in retaliation for grievances he wrote and a letter he wrote to ADC Director Wendy Kelley.[7] *See* Doc. No. 11 at 8-9. Retaliation for the use of a prison grievance procedure is actionable. *See Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam) (otherwise proper acts are actionable under § 1983 if done in retaliation for grievances filed under established prison grievance procedure). Warden Burl maintains that Ward has not established a constitutional claim for retaliation for three reasons: (1) Warden Burl was not responsible for Ward's transfer; (2) the

---

[7] In his response to Warden Burl's motion for summary judgment, Ward identifies additional grievances he filed naming Ward shortly before his transfer to VSM: MX-15-2651; MX-15-2653; MX-15-2652; and MX-15-2323. Doc. No. 188 at 7 (citing Doc. No. 80 at 177-179, 180-182, 188-200, 156-157). Ward identified other grievances that did not specifically name Warden Burl: MX-15-2585 (Doc. No. 8 at 4-5) and MX-15-2587 (Doc. No. 80 at 174-176). Ward also listed six other grievances (MX-15-2395, MX-15-2396, MX-15-2397, MX-15-2455, MX-15-2456, and MX-15-2497) but did not provide docket number and page references for the Court to locate those.

transfer was not an adverse action; and (3) there is no causal connection between Ward's actions (writing grievances and a letter to ADC Director Kelley) and the transfer.

The evidence in the record shows that Ward was transferred as the result of a random swap made by VSM classification, not Warden Burl.  *See* Declaration of Burl, Doc. No. 107-1 at 2. Ward has provided no evidence to support his contention that Warden Burl was responsible for his transfer.  Ward cannot create a question of fact by merely stating his belief that Warden Burl was responsible.  *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").  Accordingly, Ward has not established that Warden Burl took a retaliatory action against him, and Warden Burl is entitled to qualified immunity on Ward's retaliation claim.

## IV.  Conclusion

Warden Burl is entitled to summary judgment with respect to Ward's official capacity claims, and because Ward fails to establish a constitutional violation, Warden Burl is entitled to qualified immunity as to Ward's individual capacity claims.  The undersigned recommends that Warden Burl's motion for summary judgment (Doc. No. 107) be granted, and Ward's claims against Warden Burl be dismissed with prejudice.

DATED this 28th day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE